## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*, )
OMER MALIK )
11409 Shirley Gate Court )
Fairfax, Virginia 22030 )          **SEALED CASE**
)
     **Plaintiff-Relator,** )
)          **CIVIL ACTION NO.**
BRINGING THIS ACTION ON BEHALF OF )
HIMSELF AND )
THE UNITED STATES OF AMERICA, )
)          _____
c/o UNITED STATES ATTORNEY GENERAL )   **JURY DEMANDED**
U.S. Department of Justice )
950 Pennsylvania Avenue, NW )          **COMPLAINT FILED**
Washington, DC 20530-0001 )            **UNDER SEAL PURSUANT**
)                                      **TO 31 U.S.C. § 3730(b)(2)**
c/o UNITED STATES ATTORNEY )
   DISTRICT OF COLUMBIA )
555 4th Street, NW )
Washington, DC 20530 )
)
   v. )
)
BOOZ ALLEN HAMILTON, INC. )
8283 Greensboro Drive )
McLean, Virginia 22102, )
)
OXFORD GOVERNMENT )
CONSULTING, LLC )
616 Walnut Avenue )
North Beach, Maryland 20714, )
)
   and )
)
APPTEON, INC. )
501 Church Street, Suite 315 )
Vienna, VA 22180 )
)
   **Defendants.** )
_____)



4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

## COMPLAINT

**(Fraud and/or False Claims pursuant to the False Claims Act, 31 U.S.C. § 3129 *et seq.*, and Retaliation pursuant to the False Claims Act, 31 U.S.C. § 3730(h))**

COMES NOW the Plaintiff-Relator, by and through his attorneys, PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER, CHTD., on his own behalf and on behalf of the United States of America for the Complaint in the above-captioned action and states to this Honorable Court as follows:

## INTRODUCTION

1.      This is a civil action brought by Plaintiff-Relator Omer Malik on behalf of himself and the United States of America ("United States") against the Defendants, Booz Allen Hamilton, Inc. ("BAH"), Oxford Government Consulting, LLC ("Oxford"), and Appteon, Inc. ("Appteon") to recover, under the False Claims Act, 31 U.S.C. § 3729 *et seq*. (the "False Claims Act" or "FCA"), damages sustained by, and penalties owed to, the United States as the result of Defendants having knowingly presented or caused to be presented, and/or conspired to do so, to the United States false claims to obtain government money under contracts with the U.S. Department of Labor ("DOL") Office of the Chief Information Officer ("OCIO") and the DOL Employment and Training Administration ("ETA"), as more specifically detailed herein.

2.      Defendants BAH, Oxford, and Appteon engaged in a pattern of conduct with respect to the aforementioned DOL programs that violated the federal False Claims Act, by, among other things, knowingly, falsely, and unjustifiably overpricing services; failing to generate any valid business case or resource laden project plans to justify prices; failing to comply with the critical compliance and oversight aspects of their contracts; and leveraging relationships with DOL officials to obtain these unwarranted awards, the result of which was to knowingly and intentionally inflate expenses to the taxpayers for the provision of



4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

information technology services to DOL and to steer such funds to the Defendants and their allies.

3.    Plaintiff-Relator Omer Malik also brings this action against Defendants for retaliation in violation of 31 U.S.C.A. § 3730(h). He repeatedly raised his concerns to Defendants and to officials at DOL, but his employment as a contractor was terminated with no explanation promptly after he reported failures to update governance documents and raised other red flags with respect to ETA's BPM IT Modernization investment, as further detailed below.

4.    Plaintiff-Relator first became aware of facts giving rise to this Complaint less than three years ago.

## JURISDICTION AND VENUE

5.    This Honorable Court has jurisdiction over this Complaint subject to 28 U.S.C. §§ 1331and 1345 and 31 U.S.C. §§ 3730 and 3732.

6.    Venue is appropriate in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as well as 31 U.S.C. § 3732(a), because the contractual work performed by Defendants took place in this District, Defendants do business in this District, acts proscribed by 31 U.S.C. § 3729 occurred in the District, and at least one Defendant can be found, resides, and/or transacts business in this District.

7.    To the best of Plaintiff-Relator's knowledge, there has been no public disclosure of the allegations contained in this Complaint. In the event that a public disclosure has occurred, Plaintiff is an original source of all such disclosures.

8.    Pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3730(b), Plaintiff-Relator has provided the Government, through the United States Attorney General,



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

with a written disclosure of material evidence and information regarding these allegations and Plaintiff has served the United States with a copy of this Complaint.

## PARTIES

9.       Plaintiff-Relator, Omer Malik, is an adult resident of Virginia.  He is the principal of Dynamic Business Services, Inc. ("DBS"), a small minority-owned consulting company incorporated in Virginia and headquartered in Fairfax, through which he has worked as a federal agency contractor and/or subcontractor for many years.  He is a PMI certified Project Management Professional (PMP #1325150), a Certified Information Systems Security Professional (CISSP #369173), a Certified Enterprise Architect (Cert #89399 Togaf), and a Certified ITIL v3 Professional.   His core competencies include Enterprise Architecture, Capital Planning and Procurement Support, Strategic Planning and Direction, Project Management, Cyber Security, Organizational Planning, Policy Development, IT Governance, Quality Assurance, User Requirements Consulting, and Performance Management.   His agency customers have included the U.S. Air Force, the U.S. Department of State, the U.S. Department of Defense, the U.S. Department of Interior, the U.S. Department of Transportation, the U.S. Department of Treasury, and the U.S. Department of Labor.

10.       Since 2011, Mr. Malik has served DOL in various capacities, first as a Security Consultant at ETA, then starting in September 2014 as a Project Manager and Enterprise Architect for DOL's Office of the Assistant Secretary for Administration and Management ("OASAM"), where he has been responsible for reviewing Information Technology ("IT") investments for compliance with DOL strategic goals, making sure that investments remain on track and within budget and comply with DOL enterprise architecture and meet all business and performance requirements.  In this capacity, he wrote the Enterprise Roadmap



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

for DOL and served as an Enterprise Architect responsible for Target Architecture Guidance for all DOL bureaus as well as evaluating investments for Enterprise Architecture compliance per OMB guidelines. He also provided guidance on DOL's Information Resources Management Strategic Plan and created the response for DOL adherence to the FEA v2 CRM compliance.

11.    From 2011 to 2014, Mr. Malik was also responsible for Security Testing and Evaluation ("ST&E") for all major applications and the General Support System ("GSS") at DOL ETA. He handled preparation of the Certification & Accreditation ("C&A") of ETA-GSS and continuous monitoring against NIST 800 53 Rev 3 controls. In addition, he completed C&A on three major applications for ETA using CSAM Version 3. At ETA, Mr. Malik also served as PMO representative for installation of Automated Solutions to comply with OMB's continuous monitoring requirement of government IT infrastructure, conducted assessments of Security Controls as ETA's representative to DOL's Fedramp Cloud Business Process Management Services, created and updated ETA System Security Plans and Incident Response Plans, reviewed and influenced software acquisitions, and developed remediation plans for vulnerabilities.

12.    Defendant Booz Allen Hamilton, Inc. is a publicly traded company incorporated in Delaware and headquartered in Virginia and operating worldwide. It provides professional services in the areas of cybersecurity, analytics, digital solutions, engineering and science, and consulting. According to public filings, its revenue for the third quarter of fiscal year 2017 was $1.4 billion.



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

13.     Defendant Oxford Government Consulting, LLC is a privately held limited liability company incorporated in Delaware and headquartered in Maryland, focusing on IT consulting services to federal government customers.

14.     Defendant Appteon, Inc. is a privately held company incorporated and headquartered in Virginia, focusing on IT consulting services to commercial and government customers.

### FACTS GIVING RISE TO RELIEF

### BACKGROUND AND OVERVIEW

15.     Plaintiff-Relator, through his company DBS, was hired as a subcontractor to Oxford in September 2014 to work for the governance department, known as the Strategic Business Management group, at DOL OCIO.

16.     In this role, as part of Oxford's team, Plaintiff-Relator undertook the serious responsibility to oversee compliance by other entities with agency and industry standards for ensuring sound investments in IT processes and resources.

17.     Plaintiff-Relator soon noticed a complete lack of governance both at the capital planning level and at the governance level at the department.  Being a certified Enterprise Architect, he brought his concerns to the attention of both his federal contract Project Manager, Kimberly Boudreaux, and the federal agency capital planning Project Manager, Kevin Clark.

18.     Mr. Malik also raised his concerns repeatedly with Oxford, the company to which he served as a subcontractor, communicating directly with Tom Smialowicz, the Program Manager within Oxford.



PALEY ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354  fax

www.paleyrothman.com

19.     Notably, Mr. Smialowicz (as well as the president of Oxford, Mr. Greg Kelly) is a former employee of BAH, which was the largest contractor managing IT investments at OCIO.  The governance role of the Oxford team is supposed to involve independent oversight of compliance by BAH and others.  Oxford has admitted to Plaintiff-Relator that it has "strategic relationships" with other contracting companies who work at OCIO, including BAH.

20.     Oxford has engaged in a pattern and practice of hiring unqualified junior analysts to perform the critical and complex governance function at OCIO, which has resulted in a rubber stamp to the multimillion dollar investments made by the very companies, such as BAH, that Oxford admits to having strategic relationships with.

### The NCFMS Sole Source Award

21.     The New Core Financial Management System ("NCFMS") is the financial management system used by DOL.

22.     On June 8, 2016, BAH was awarded a sole-source contract to manage and maintain the NCFMS for DOL (Solicitation Number DOL-OPS-R-00027, Contract Award Number GS-35F-0306J, Task/Delivery Order Number DOL-OPS-16-F-00063).   *See* https://www.fbo.gov/index?s=opportunity&mode=form&id=faf2ee1ef8a551b320ac80bafac8a a9d&tab=core&tabmode=list&=

23.     On June 17, 2016, OASAM's Office of Procurement Services ("OPS") issued a Limited Sources Justification as to the award to BAH.  *Id.*

24.     The contract – which had a base period of performance of 12 months with two 12-month option periods from July 1, 2016 to June 30, 2019 – was awarded by DOL directly



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

7

to BAH through GSA's IT Schedule for $74,206,176.26 for the base year and all option periods.

25.     Upon information and belief, that contract was later doubled to approximately $150 million.

26.     The business case for spending this much money for BAH to manage NCFMS should have understandably been detailed and robust, to comply with regulatory and industry standards for IT investments of such significance and cost.

27.     Plaintiff-Relator reviewed the so-called business case for this investment, via the OCIO shared drive's capital planning folders.  The entirety of the business case was a simple pie chart dividing $30 million of claimed average yearly costs into categories such as "IT Operations" with an indication of 5-6 million dollars in costs, "IT Infrastructure" with an indication of 5-6 million dollars in costs, "Application Support" with an indication of 5-6 million dollars in costs, "Application Development" with an indication of 5-6 million dollars in costs, and some other categories and similarly vague assignments of cost estimates.  There was no other information or detail to justify the tens of millions of dollars paid by the federal government to BAH or to justify the cost expenditures suggested by this simple pie chart.

28.     Strikingly, these general categories and vague cost estimates reflected in the pie chart were not broken into any further detail, nor was there any explanation as to how they were derived.  There was no resource laden project plan in the set of documents for the business case, despite the fact that, upon information and belief, such a plan is required by federal rules and regulations.

29.     Furthermore, although required by the Federal Acquisition Regulations ("FAR") and possibly also by solicitation terms and other rules, none of BAH's price quotes



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

that Mr. Malik reviewed in relation to the NCFMS work ever contained labor-hour estimates detailed by skill category and applied to each task's milestones or deliverables. Indeed, no such tasks were defined. Yet DOL accepted BAH's quotes even though it did not have this information. In addition, in none of the documents did DOL ever evaluate the reasonableness of the prices.

30.     DOL never sought other sources for this NCFMS work, despite the fact that such sources are easily identifiable in the marketplace. For example, Oracle Professional Services has a very successful record of implementing the ORACLE eBusiness Suites application of which the NCFMS system is comprised. Instead, the contract was sole-sourced to BAH for tens of millions of dollars.

31.     DOL OAMAS OPS claimed in its Limited Sources Justification document that the rationale for awarding the contract to BAH was based largely on the fact that the previous vendor, Global Computer Enterprises ("GCE"), was forced to declare bankruptcy in 2014 and, notably, that the GCE staff with the "specialized skills" and "corporate knowledge" of NCFMS were "now BAH staff," and that the system "contain[s] unique technical and functional complexity known only to the functional and technical staff who were formerly employed by the software creator GCE and who are now employees of BAH."

32.     However, in an article published by Law360 on September 8, 2014, it was made clear that the transfer of GCE's key employees to BAH was a *condition precedent* of GCE's request to sell assets related to NCFMS, and it was offered in GCE's *own* motion to the bankruptcy court:

> GCE sought the bankruptcy court's permission to sell interfaces, licenses, servers, software and documentation necessary to operate the DOL's New Core Financial Management System. The sale is contingent on several factors, including the transition



4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

of certain key GCE employees to the department's new contractor, Booz Allen Hamilton, according to GCE's motion.

Dietrich Knauth, *DOL, GSA To Pay $24M For Bankrupt Contractor's Assets*, Law360 (Sept. 8, 2014), *available at* https://www.law360.com/articles/575088/dol-gsa-to-pay-24m-for-bankrupt-contractor-s-assets (subscription service). Thus the sole-source justification for using BAH appears to have been reverse engineered.

33. To reiterate, the government appears to have pressured a failing contractor, GCE, to transition its key employees to BAH to run the system in 2014, then used the presence of those same key employees now at BAH to justify a sole-source award for $75 million in 2016, which then doubled to $150 million.

34. This series of events raises serious questions about the adequacy of DOL's rationale for awarding a sole-source multimillion dollar contract to BAH.

35. Plaintiff-Relator brought his concerns about this scenario to DOL's capital planning Project Manager, Kevin Clark, on or around January 10 or 12, 2017. No action was taken.

36. In a number of meetings with BAH personnel and DOL personnel regarding the NCFMS project, the last of which occurred on January 9, 2017, Mr. Malik asked BAH team members about the status of an Oracle upgrade (from EBS suite version 12 to version 12.1 to bring it up an Oracle supported version) and what effect it had on customizations. BAH representatives told Mr. Malik there would be no effect, because the database design would not change; only the Oracle application would be upgraded. In essence, this means that BAH was charging the government $5 million to apply an upgrade which basically required no customization on the part of BAH. Once again, there was no resource laden project plan provided for this work. Moreover, there were no subject matter experts on the capital



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

planning team at DOL who could understand the Enterprise Architecture and other IT issues involved in this process. In fact, Mr. Malik was the only technical subject matter expert on the whole team reviewing the NCFMS project.

37.     On January 31, 2017, just days after raising concerns that BAH was charging DOL $5 million for a simple, non-customized Oracle upgrade, and just days after raising concerns about the suspicious circumstances under which BAH was awarded a $75 million sole-source contract with a business case comprised of a single vague pie chart, Plaintiff-Relator was terminated from his position at DOL – without notice and without any stated cause.

38.     The government is also working on a transition to the same system (Oracle e-business suite) that will be hosted by a shared service provider. This transition project has been estimated to cost $50 million. Plaintiff-Relator was terminated before he could see any resource laden project plan, with specific tasks and deliverables, to justify such an estimate. Based on Mr. Malik's experience and expertise in this area, this estimated cost completely lacks credibility. This would be in *addition* to the $150 million being paid to BAH to maintain the system.

39.     Notably, other governments have transitioned to Oracle e-business suite for far less than $50 million. One government in England implemented the same solution for about $5 million. *See* Oracle E-Business Suite Release 12 and 12.1 Customer Success Stories, INFORMATION FOR SUCCESS, March 2013, at page 120, *available at* http://www.oracle.com/us/products/applications/ebusiness/ebs-r12-1-booklet-sept-2011-1355209.pdf

PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

40.     Oxford, working in collusion with BAH and perhaps senior DOL officials such as the CIO at the time, appears to have terminated Plaintiff-Relator for taking his compliance and oversight responsibilities seriously and asking tough questions about how DOL and BAH are justifying massive expenditures without any meaningful documentation of costs, and out of apparent concern that he would continue to raise these issues with the new $50 million Oracle e-business suite transition project.

41.     Ironically, it was Oxford's role at DOL OCIO to provide the very governance services, including independent oversight and questioning of IT investments, that Mr. Malik was trying to provide.

42.     Plaintiff-Relator estimates that the United States could recover at least $20 million in compensatory damages for unjustified expenditures claimed by BAH for the NCMFS investment since 2016, not including statutory damages, treble damages, and other damages. That estimate could be much higher once tasks are actually defined and resource laden project plans are provided and vetted by technical experts for realistic pricing. For outlying option years through 2020, this could represent future cost savings exceeding $100 million dollars.

43.     This NCFMS system is currently still being maintained by BAH at a cost of about $30 million a year, despite no real justification for that substantial expense. *See* https://www.itdashboard.gov/drupal/summary/012/125.

### Other Instances of Overbilling by BAH

44.     The NCFMS program is not the only instance of BAH overbilling the government despite questions and challenges from Mr. Malik.



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

45.     BAH charged DOL ETA $1.6 million to automate a process in ETA's Unemployment Insurance Database. In actuality, this work involved moving a single text file containing 52 lines of text (basically the unemployment numbers from each state). In the past, this file was e-mailed from one analyst to another analyst in order to be made public. BAH automated the process by simply placing the file on a directory instead, and a very simplistic automated process moves the file data to another directory.

46.     The bill for this miniscule task was $1.6 million. Management personnel from the Unemployment Investment team joked with Plaintiff-Relator at a meeting that maybe OCIO/BAH had used the $1.6 million to purchase some hardware – that was the only thing they could imagine to justify the cost. But Plaintiff-Relator is not aware of any hardware that would be needed to move a 52-line text file, let alone hardware that costs $1.6 million.

47.     BAH is also charging $3.6 million to OCIO for Operations and Maintenance ("O&M") work on OCIO's Cross Agency Data Sharing investment. But there is no one actually using this system, begging the question why and how $3.6 million worth of O&M work could be justified. This investment is nothing more than an Oracle database residing on OCIO servers that accepts data from four enforcement agencies via interfaces. No manipulation of data is performed. It simply accepts data to store in the database.

48.     BAH charged the government $12 million to build this database. This is again being done without any resource laden project plans or tasks identified. The only explanation is knowing and flagrant fraud.

49.     Based on his experience and expertise, Plaintiff-Relator estimates that the United States could recover at least $10 million in compensatory damages for unjustified expenditures claimed by BAH for OCIO's Cross Agency Data Sharing investment, not



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

including statutory damages, treble damages, and other damages, once technical experts cost out the work that has been performed. O&M costs of $3.6 million for this project are utterly unjustifiable.

50.    Another DOL IT investment concocted by OCIO and given to BAH to "develop" is called "Unified Communications." Under the auspices of this investment, BAH is charging DOL millions of dollars to "modernize infrastructure." But OCIO already has a separate network modernization investment that it spent $46 million dollars on in FY16. In fact, there is yet another IT operations investment that also supposedly did the same thing for $84 million dollars in 2016.

51.    Once again, there was never any breakdown of costs or business case for this Unified Communications project, and, like all the other BAH projects, there is no resource laden project plan.

52.    Based on his experience and expertise, Plaintiff-Relator estimates that the United States could recover at least $17 million in compensatory damages for unjustified expenditures claimed by BAH for DOL's Unified Communications investment, not including statutory damages, treble damages, and other damages, once technical experts cost out the work that has been performed.

53.    BAH also installed CISCO VOIP software (without following CISCO best practices). BAH purchased some equipment for conference rooms such as cameras to hold live meetings remotely over the internet.    Software was installed for a small pilot for a small sub-department within DOL and for some individuals in OCIO.



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

54.     BAH's bill for this work was $20 million.  It claims this setup will save DOL over $20 million but there is no documented support for such a claim.  Plaintiff-Relator raised this point, and his concerns were documented by Roger Seganish of Oxford.

55.     Both the Network Modernization investment ($46 million) and the IT Operations investment ($84 million), in addition to the Unified Communications investment referenced above, are ostensibly for modernizing hardware on the DOL network.  To Mr. Malik's knowledge as the governance/compliance reviewer for these investments, no document has ever been provided that breaks down which of these investments is doing what modernizations or updates.  In capital planning submissions, no such project plans, task oriented milestones, or resource laden project plans have ever been provided.

56.     BAH has charged the government tens of millions of dollars without any cost benefit analysis or any resource laden project plans to justify tasks under the IT modernization.  For example, the integration plan was developed for DOL by BAH.  DOL in July 2014 apparently awarded an $11 million IT Service Desk contract to BAH to "provide continued implementation of the OCIO Integration and Modernization Initiatives" to the agency's OCIO.     Yet, BAH has not done any real network consolidations; the network consolidation is done at the administration level where employees who worked for other agency departments now work for DOL OASAM.  No actual network consolidation has taken place, according to documents provided to the Strategic Business Management group at DOL OCIO.

57.     Additionally, after the current agency network administrators (who are now OCIO employees) are moved into DOL OCIO, there is a chargeback for any work they perform for the agency.  That work was performed without charge when the administrators



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

worked for the agency. The BAH project manager in charge of this arrangement (Jeff Johnson) has now been made a federal employee in charge of a $650 million IT budget. Money paid to BAH for DOL network consolidation since 2014, without any actual conversions, easily runs into tens of millions of dollars.

58.     The previous DOL CIO had a practice of using a BAH consultant as her secretary. The new CIO has continued this practice. Obviously BAH is getting paid to provide this personnel in service to the CIO – personnel who works very closely with the CIO – who in turn ultimately oversees the IT investment budget for DOL. It is easy to imagine how conflicts of interest arise under this arrangement given the vast amount of money that is directed to BAH.

59.     Most of the DOL IT investments mentioned above were awarded to BAH as task orders under its Blanket Purchase Agreement ("BPA") *without any competition*.

### ETA Compliance Failures and Appteon

60.     Plaintiff-Relator worked at ETA as a subcontractor on a security services contract between 2011 and 2014 before he worked at OCIO in the governance division between 2014 and 2017. Accordingly, he is very familiar with all ETA business mission applications.

61.     ETA routinely fails to submit updated governance documents to OCIO for compliance purposes.

62.     ETA has an investment called ETA BPM IT Modernization. Plaintiff-Relator met with Peter Lee, then-deputy director at the Office of Information Systems and Technology ("OIST") within ETA, in September 2015 to help with governance documents. Plaintiff-Relator learned at that time that there are no requirements and no tasks defined for



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

16

governance of ETA IT investments. Mr. Lee stated that as a pilot, ETA was converting over a system called Rapids 1.0 to Rapids 2.0 using a new cloud-based platform.

63.     By September 2016, a year later, ETA had already spent $11 million on this pilot investment. *See* https://govtribe.com/contract/idv/gs35f0111y-dolops14a0009. ETA then suddenly changed the name of this investment to "Advisory Services" and tasked the incumbent contractor, Appteon, with another Proof of Concept project priced at $1 million on September 28, 2016, and money was fully paid the very next day on September 29, 2016. *See* https://govtribe.com/contract/award/dolops14a0009-dolops16u00196. In effect, after burning $11 million on this pilot, ETA scrapped it, started over, and paid the contractor *another* $1 million to develop a whole new Proof of Concept.

64.     This approach had been approved by DOL OCIO capital planning staff (Kevin Clark) and Oxford capital planning staff (Stevie McGaffery and Marita Emparado) in a meeting with ETA capital planning staff (Candice Pope) without Mr. Malik's knowledge.

65.     Kevin Clark was DOL OCIO Capital Planning lead. Marita Emparado was Oxford's Program Manager in charge of Capital Planning, and Stevie McGaffery was an Oxford employee. This was Ms. McGaffery's first capital planning job. She has no capital planning or information technology experience. Her job is to evaluate multimillion dollar Information Technology investments for compliance with federal guidelines and DOL guidelines. Given her background, and the complexities of this job, one wonders if Oxford hired her to simply be a rubber stamp on DOL IT investments benefitting BAH, Appteon, and others.

66.     Plaintiff-Relator discovered what had transpired during a routine review of investments, as part of his governance oversight responsibilities, a month later. He then met



PALEY ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

with Ms. Emparado, expressed his concerns, and asked why this IT investment for Advisory Services had been given a "green" rating (indicating compliance with governance standards) for the End of Year Fiscal Year 2016 review (October 2016).

67.     Amazingly, Ms. Emparado told Mr. Malik that OCIO works on the "honor system" and just accepts whatever the investment (i.e., the contractor awarded the funds for the investment) tells them, notwithstanding the existence of an independent governance review process within DOL, which Oxford and its subcontractors had been hired to perform.

68.     Plaintiff-Relator told OCIO he would be giving a "red" rating for his portion of the governance scorecard for this investment, explaining in detail the basis for his concerns and the poor rating.  Ms. Emparado and Ms. McGaffery, who were both Oxford employees, ultimately changed their portions of the scorecard to a "red" rating as well, perhaps feeling guilty that Mr. Malik had caught them knowingly neglecting their duties or worse.

69.     The red ratings created quite a stir at ETA/OCIO, and Candice Pope (capital Planner of ETA) and Mr. Malik held a meeting to discuss his findings.  Ms. Pope told Plaintiff-Relator that Peter Lee or John Edwards of ETA might be conspiring with Appteon to defraud ETA.  Plaintiff-Relator responded that neither Mr. Lee or Mr. Edwards was still working at ETA/DOL at that time, and whoever approved the $1 million Proof of Concept for the "Advisory Services" modernization project with Appteon is guilty of, at best, lack of fiduciary duty and, at worst, corruption.

70.     Plaintiff-Relator also inquired of Ms. Pope why the task order had been paid in full the very next day after issuance, before the work had even started.  She had no answer.

71.     After Plaintiff-Relator had raised these issues, Aung Htein, the director of ETA OIST, made a show of complaining about Appteon (and Appteon had complained about him



4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

also), but notwithstanding, Appteon kept receiving more contract work from ETA for business process modernization, and Aung kept signing off on it.

72.     Two of Aung's deputies both quit within a year, both citing bad management as the reason.   One was Peter Lee mentioned above, and the other was Jason Yuen who actually sent out a department-wide email stating that ETA was the worst run organization he had ever worked for.

73.     Appteon pays a subcontractor for advisory services.  This begs the question what services of value Appteon, and ultimately DOL, is receiving from this subcontractor if after two years of work on the pilot, they had to scrap the entire thing and do a whole new Proof of Concept.  After two years and $11 million spent by DOL, Rapids 2.0 is still not fully deployed, as of Plaintiff-Relator's last discussions with Ms. Pope.

74.     Again there was no resource laden project plan or project tasks with milestones ever provided by Appteon with respect to this investment.

75.     Based on his experience and expertise, Plaintiff-Relator estimates that the United States could recover up to $9 million in compensatory damages for unjustified expenditures on this ETA contract, not including statutory damages, treble damages, and other damages, once technical experts cost out the work that has been performed.

76.     Appteon is now also being used for another DOL IT investment under the Workforce Innovation and Opportunity Act, for which BAH is providing business analysis and PMO duties.   This is being done at the behest of DOL OCIO.   This arrangement was designed by DOL OCIO former CIO Dawn Leaf with Aung Htein when ETA was in trouble for not delivering on Workforce Innovation and Opportunity Act upgrades.   Dawn Leaf recommended ETA use BAH to come up with business requirements.  BAH and Appteon are



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

now free to continue billing the government tens of millions of dollars without any real oversight at ETA.

77.     Before securing its ETA work, Appteon only had one $300,000 contract on its books; now it has billed ETA almost $14 million in less than two years when all of ETA's investments are totaled.

78.     Just before Plaintiff-Relator was fired for no reason, OCIO capital planners and Oxford tried to convince Mr. Malik that they were improving their processes in response to his concerns.  Upon information and belief, these statements by OCIO and Oxford were just for show, to avoid raising concerns before Mr. Malik was let go.  He never saw any evidence of genuine efforts to improve or address his concerns.

79.     On February 2, 2017, shortly after he was let go, Kimberly Boudreaux, a program manager within OCIO, told Mr. Malik that he is very talented, that she respects him and his work, and that the situation was very mismanaged by Oxford.

## CAUSES OF ACTION

### Count I – Violations of the federal False Claims Act, 31 U.S.C. § 3729 (a)(1)(A), Presenting False Claims for Payment

80.     The allegations contained in the above paragraphs are hereby re-alleged as set forth fully above.

81.     Plaintiff-Relator seeks relief against Defendants under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

82.     As set forth above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in connection with the submission of requests for funding for the various DOL IT investments described above, by significantly overcharging for services; orchestrating unjustified awards and payments in light



4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

of the absence of project plans, defined tasks, or other adequate support; and failing to perform the core services for which they were hired, including but not limited to IT modernization and governance/oversight thereof.

83.     The United States paid to Defendants funds for the various DOL IT investments described above because of such false or fraudulent claims.

84.     In performing all of the acts described herein, Defendants have defrauded the United States of America by violating 31 U.S.C. § 3729(a)(1)(A), to the damage of the Treasury of the United States of America, by causing the United States to pay out money it was not obligated to pay.  In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to false claims for payment that Defendants presented or caused to be presented, directly or indirectly, to the United States.

85.     As a direct and proximate result of Defendants' fraudulent and illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly dozens, if not hundreds, of false claims and spent many tens of millions of dollars.

86.     By reason of Defendants' false or fraudulent claims, the United States has been damaged in a substantial amount to be determined at trial.

87.     Damages to the United States include, but are not limited to, the full amount it has paid on any such fraudulent claims.  Defendants are liable to the United States for three times the full amount of these damages, plus interest.

88.     Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand to ten thousand dollars ($5,000- $10,000), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 and any applicable U.S.



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

Department of Justice Rules on Civil Monetary Penalties Inflation Adjustment, plus three times the amount of damages which the Government has sustained.

89.     Defendants are jointly and severally liable for damages arising out of fraudulent payments received from the United States under this Count.

### COUNT II – Violations of the federal False Claims Act, 31 U.S.C. § 3729(a)(l)(B), Use of False Statements and Certifications)

90.     The allegations contained in the above paragraphs are hereby re-alleged as set forth fully above.

91.     Defendants violated Section 3729(a)(l)(B) of the False Claims Act, as amended. As set forth above, Defendants knowingly made, used, and caused to be made and used, false records and statements material to the false or fraudulent claims for federal funding.

92.     Defendants knowingly made false statements and false certifications in order to obtain payment of funding for DOL IT investments, with full knowledge that these false statements and false certifications would be material to the United States' decision to pay.

93.     As a direct and proximate result of Defendants' fraudulent and illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly dozens if not hundreds of false claims and spent tens of millions of dollars.

94.     By reason of Defendants' false or fraudulent claims, the United States has been damaged in a substantial amount to be determined at trial.

95.     Damages to the United States include, but are not limited to, the full amount it has paid on any such fraudulent claims. Defendants are liable to the United States for three times the full amount of these damages, plus interest.



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

96.     Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand to ten thousand dollars ($5,000- $10,000), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 and any applicable U.S. Department of Justice Rules on Civil Monetary Penalties Inflation Adjustment, plus three times the amount of damages which the Government has sustained.

97.     Defendants are jointly and severally liable for damages arising out of fraudulent payments received from the United States under this Count.

### COUNT III – Violations of 31 U.S.C. §3729(a)(l)(C), Conspiracy to Violate the federal False Claims Act

98.     The allegations contained in the above paragraphs are hereby re-alleged as set forth fully above.

99.     Defendants knowingly conspired with one another to commit the violations of the False Claims Act, 31 U.S.C. § 3729(a), described above in Counts I-II.

100.    In performing all of the acts described herein, Defendants have defrauded the United States of America by conspiring to violate 31 U.S.C. §§ 3729(a)(l)(A) and (B) in contravention of the False Claims Act, U.S.C. §3729(a)(l)(C), to the damage of the Treasury of the United States of America, by causing the United States to pay out money it was not obligated to pay.   In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to false claims for payment that Defendants presented or caused to be presented to the United States.

101.    As a direct and proximate result of the fraudulent and illegal actions and pattern of fraudulent conduct by Defendants, the United States has paid directly or indirectly dozens if not hundreds of false claims and spent tens of millions of dollars.



PALEY ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354  fax

www.paleyrothman.com

102.    Damages to the United States include, but are not limited to, the full amount it has paid on any such fraudulent claims. Defendants are liable to the United States for three times the full amount of these damages, plus interest.

103.    Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand to ten thousand dollars ($5,000- $10,000), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 and any applicable U.S. Department of Justice Rules on Civil Monetary Penalties Inflation Adjustment, plus three times the amount of damages which the Government has sustained.

104.    Defendants are jointly and severally liable for damages arising out of fraudulent payments received from the United States under this Count.

### COUNT IV – Violations of 31 U.S.C. §3730(h), Retaliation under the Federal False Claims Act

105.    The allegations contained in the above paragraphs are hereby re-alleged as set forth fully above.

106.    Plaintiff-Relator was discharged from his position as a subcontractor to Oxford in the provision of OCIO governance services because of lawful acts done by him in furtherance of an action under the False Claims Act or other efforts to stop 1 or more violations of Subchapter III of Chapter 37, Subtitle III, of Title 31 of the U.S. Code.

107.    Plaintiff-Relator is entitled to all relief necessary to make him whole, including two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

108.    Reinstatement is not a viable form of relief in light of the circumstances and the toxic environment at the workplace. As such, alternative relief should be granted.

PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

109.   In light of their collusion and conspiracy as set forth above, Defendants are jointly and severally liable for damages arising out of this Count.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Relator request that judgment be entered in favor of the the Government Plaintiff and Plaintiff-Relator and against Defendants pursuant to the damages set forth above for each Count, including but not limited to compensatory damages, treble damages, the maximum amount of civil penalties, and prejudgment and post-judgment interest, for each and every individual FCA violation, and attorneys' fees as applicable, and that Defendants be held jointly and severally liable as set forth in the individual Counts above; and

Plaintiff-Relator further requests that he be awarded an amount that the Court decides is reasonable, which shall be within the ranges established by law of a percentage of the proceeds to the Government Plaintiff of the action or settlement of the claims or alternative remedies, and the proceeds or settlement of any related administrative, criminal, or civil actions, including the monetary value of any equitable relief, fines, restitution, or disgorgement, under the federal FCA, as well as all reasonable attorney fees and costs incurred, with prejudgment and post-judgment interest; and

Plaintiff-Relator further requests that he be awarded all damages available under Count IV for retaliation by Defendants as set forth in that count, including but not limited to back pay, compensatory damages, lost profits, double or treble damages, punitive damages, other consequential damages, harm to reputation, as well as all reasonable attorney fees and costs incurred, with prejudgment and post-judgment interest, and that Defendants be held jointly and severally liable as set forth in the individual Count above; and



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com

Plaintiff-Relator further requests that the Government Plaintiff and Plaintiff-Relator be granted any and all preliminary and permanent injunctive relief, as appropriate, and any and all other relief made available by the federal FCA which was not specifically referenced above, and all such other and further relief as is deemed appropriate by the Court.

### JURY DEMAND

Plaintiff hereby demands a jury trial for all issues triable by jury.

Respectfully Submitted,

PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG & COOPER, CHTD.

By: _____

Ryan S. Spiegel
Bar No. 489103
Telephone: (301) 968-3412
Email: rspiegel@paleyrothman.com
4800 Hampden Lane, 6th Floor

Bethesda, MD 20814-2930
Facsimile: 301-654-7354

*Counsel for* Plaintiff-Relator Omer Malik



PALEY
ROTHMAN
ATTORNEYS AT LAW

4800 HAMPDEN LANE
6TH FLOOR
BETHESDA, MD 20814
301-656-7603
301-654-7354 fax

www.paleyrothman.com